FILED

2016 May-16  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| LIBERTY CORPORATE CAPITAL LIMITED | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 1:16-cv-00791-VEH |
| v. | ) | |
| | ) | |
| CLUB EXCLUSIVE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Pursuant to the Court's May 16, 2016, Order, Plaintiff Liberty Corporate Capital Limited ("Liberty") files its Amended Complaint for Declaratory Judgment against Club Exclusive, Inc. ("Club Exclusive" or "Defendant") seeking a declaration of the Parties' rights and obligations under the subject insurance policy. In support thereof, Liberty alleges as follows:

## JURISDICTION AND VENUE

1.

Liberty is an English corporation formed under the laws of England and Wales. It is a citizen and resident of the United Kingdom, with its principal place of business at 20 Fenchurch St., London EC3M 3AW, United Kingdom. A limited

entity under the laws of England and Wales is similar to a corporation under Alabama law.  As such, Liberty has no members to affect diversity jurisdiction.  It has one shareholder, a parent company.

2.

Club Exclusive, Inc. is a corporation incorporated under the laws of the State of Alabama, with its principal place of business at 233 Rowland Lane, Munford, Alabama 36268.  Club Exclusive is a citizen and resident of Alabama. Club Exclusive may be served through its registered agent, Antineekia White, at 233 Rowland Lane, Munford, Alabama 36268.

3.

This Court has personal jurisdiction over the Defendant because it is a citizen and resident of the State of Alabama.

4.

This Court has subject matter jurisdiction over each of the claims on diversity grounds.  Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction as Liberty is diverse from Defendant and the amount in controversy exceeds $75,000.00.

5.

Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this litigation occurred in this district and the Defendant resides in this division.

6.

This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Liberty's obligations to Club Exclusive under a policy of insurance issued to Club Exclusive.  Liberty is uncertain as to its duties, rights and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policy, including Club Exclusive's insurable interests in the subject property.  An actual and justiciable dispute over those duties, rights, and obligations exists between the Parties.

## **BACKGROUND FACTS**

## I.    **THE PROPERTY**

7.

On June 23, 2012, Antineekia White purchased approximately 13 acres of land in rural Alabama from Bruce Hutchinson for $2,000.

8.

This property was located at 3479 Barclay Road, Alpine, Alabama 35014 (the "Property").

9.

Ms. White built a commercial building (the "Building") on the Property using her personal funds.

10.

The Building was designed to operate as a bar/nightclub.

11.

Ms. White claims she spent approximately $350,000 to $375,000 on the construction of the Building.

12.

Construction of the main structure was completed in 2012, and all additional construction was completed by June 2014.

13.

Ms. White did not take out a loan to assist in paying for the construction of the Building.

14.

Ms. White testified she accepted $10,000 from Martin Taylor, which was used towards the construction of the Building.

15.

Ms. White paid for most, if not all, of the construction in cash.

16.

Ms. White claims she was able to afford the purchase of the Property and construction of the Building because she received approximately $130,000 in insurance proceeds from a fire on a different property and saved her money.

17.

In 2008, Ms. White earned $30,646 in gross wages.

18.

In 2009, Ms. White earned $33,800 in gross wages.

19.

In 2010, Ms. White earned $17,949 in gross wages.

20.

In 2011, Ms. White was unemployed and received $16,380 in unemployment compensation.

21.

In 2012, Ms. White was unemployed and received $11,880 in unemployment compensation.

22.

In 2013, Ms. White earned $22,515 in gross wages.

23.

In 2014, Ms. White earned $43,344 in gross wages.

24.

Ms. White admits that a large amount of money, at least $125,000, used in the construction of the Building never passed through a bank.

## II.   CLUB EXCLUSIVE'S FORMATION AND CORPORATE IDENTITY

25.

Club Exclusive Inc. ("Club Exclusive") is an Alabama corporation formed on October 5, 2011.

26.

Ms. White acted as the incorporator and is Club Exclusive's director.

27.

Club Exclusive was created for the purpose of operating a bar/nightclub.

28.

Ms. White and Club Exclusive have repeatedly represented that Club Exclusive is a separate and distinct entity from Ms. White, and that it maintains its corporate formalities.

29.

In a March 16, 2016, letter, Alan Jackson, Ms. White and Club Exclusive's attorney, stated "Mr. Kahn and I had a very lengthy conversation as to what each of us believe to be the duty of Mrs. White to produce.  Fortunately, the Contract of Insurance appears to have clarified our dispute.  Per the Policy the named insured is shown in the Declaration being Club Exclusive Inc.  Additionally, the above referenced Policy Language requires the 'insured' **(Club Exclusive Inc.)** to produce any documents relating to the insurance or the claim, including an insured's books and records."[1]

30.

In a March 24, 2016, email, Mr. Jackson stated "The insured is 'CLUB EXCLUSIVE' not Mrs. White."[2]

31.

In another March 24, 2016, email, Mr. Jackson states "If we had been involved with this claim from day one we would have refused to allow Mrs. White to produce personal documents as 'Club Exclusive' is the Insured pursuant to the policy of

---

[1] A copy of Mr. Jackson's March 16, 2016, letter is attached as "Exhibit A."
[2] A copy of Mr. Jackson's first March 24, 2016, email is attached as "Exhibit B."

insurance. . . . It is my intent to revoke any and all authorizations that Mrs. White may have executed on behalf of herself and not those for (Club Exclusive)."[3]

32.

At her examination under oath ("EUO"), Ms. White testified that she understands what a corporation is and that corporations are used to protect their owners from liability.

33.

Ms. White testified she incorporated Club Exclusive with the understanding that the corporate entity would protect her from certain liability.

34.

Ms. White testified that Club Exclusive is a distinct and separate entity from herself.

## III.   CLUB EXCLUSIVE'S OPERATIONS

35.

In June 2012, Club Exclusive applied for a liquor license.[4]

---

[3] A copy of Mr. Jackson's second March 24, 2016, email is attached as "Exhibit C."
[4] A copy of Club Exclusive's liquor license application is attached as "Exhibit D."

36.

Ms. White signed the liquor license application on behalf of Club Exclusive, attesting to the truthfulness of the information provided, including information referencing the "Lease/property ownership."

37.

In the liquor license application, Club Exclusive is identified as leasing the Property from Ms. White.

38.

In August 2012, Club Exclusive voluntarily withdrew the application before a decision could be made on whether to grant Club Exclusive a liquor license.

39.

Club Exclusive never resubmitted an application for a liquor license.

40.

Club Exclusive never hired any employees.

41.

Club Exclusive never applied for any other operating licenses, including a business license.

42.

Club Exclusive never earned any revenue.

43.

Club Exclusive never filed any taxes.

44.

Club Exclusive never opened or operated a business.

45.

Club Exclusive was not going to open or begin operating the intended bar/nightclub in the foreseeable future.

## IV.    THE LEASE OF THE PROPERTY

46.

On April 30, 2012, Ms. White leased the Property to Club Exclusive.[5]

47.

The term of the Lease began on May 1, 2012, and continued for a period of three (3) years, terminating on the last day of April 2015.

48.

Club Exclusive agreed to pay $1,000.00 per month in rent, for a total of $36,000.00 for the entire term of the Lease.

49.

Club Exclusive never made a rent payment.

---

[5] A copy of the Lease is attached as "Exhibit E."

50.

The Lease could be renewed by Club Exclusive for an additional three (3) years under the same terms if Club Exclusive delivered a written request to Ms. White at least 30 days before the expiration of the initial term.  Club Exclusive did not exercise this option in accordance with the terms of the Lease.

51.

Under the terms of the Lease, in the event Club Exclusive continued to occupy the Property after the expiration of the lease term, the tenancy was to be considered a tenancy at sufferance.

## V.    THE LOSS

52.

At some time between July 14, 2015, and July 16, 2015, the Building burned (the "Loss" or "Fire").

53.

Club Exclusive notified Liberty of the Loss on July 17, 2015 (the "Claim").

54.

The Property was inspected by cause and origin ("C&O") investigators on multiple occasions.

55.

Ms. White testified she had all of her money tied up in the Property and Club Exclusive at the time of the Fire.

56.

Club Exclusive provided Liberty with an itemized inventory list detailing the alleged contents of the Building at the time of the Fire (the "Inventory List").[6]

57.

Ms. White testified that she purchased the contents of the Inventory List with her personal funds.

58.

Ms. White testified she paid for most, if not all, of the contents in cash.

59.

The claimed value of the items on the Inventory List totals $151,975.03.

60.

The Inventory List includes numerous non-bar/nightclub related items such as: a $1,198.99 Howard Miller Niagra Hutch; a $3,738.99 Palais Royale eight drawer combo dresser with mirror by Michael Amini; a $2,599.98 Palais Royale three drawer Bachelor's chest night stand by Michael Amini; a $3,258.99 Palais Royale

---

[6] A copy of the Inventory List is attached as "Exhibit F."

Armoire by Michael Amini; three boxes of perfume and/or cologne costing $1,000 per box; two $334.99 Waterford Lismore Crystal Candlesticks; at least 22 bath towels; a $3,199.98 duvet style pillow top mattress; and a $1,999.99 queen metallic bed.

61.

The Inventory List also includes numerous other items, no evidence of which were found at the Property following the Loss, including: four $546.00 Reserve toilet paper holders; six $392.00 Liason toilet paper holders with covers; three poker tables, ranging from $949.00 to $1,649.99; a $1,999.99 Kenmore Elite 28 cubic foot side-by-side stainless-steel refrigerator; seven  55" or larger high-definition and ultra-high definition televisions, ranging from $1,148.99 to $4,497.00; a $3,699.99 Canon DSLR camera; a $2,899.99 MakerBot 3D Printer; a $1,882.99 Fagor 59 bar refrigerator cooler; and two $4,599.99 RST Brands deco six piece all weather patio sectional set with umbrella.

62.

On April 19, 2016, Club Exclusive submitted a Sworn Statement In Proof of Loss (the "Proof of Loss") and attached a Statement of Loss in support.[7]

---

[7] A copy of the Proof of Loss is attached as "Exhibit G."  A copy of the Statement of Loss is attached as "Exhibit H."

63.

The Proof of Loss states that Club Exclusive Inc. is the insured under the Policy.

64.

The Proof of Loss states: "Title and Interest: At the time of the loss the interest of your insured in the property described therein was an insured owner.  No other person(s) had any interest therein or encumbrances thereon, except: No exceptions."

65.

The Proof of Loss states: "Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: No exceptions."

66.

In the Proof of Loss, Club Exclusive claims an actual cash value for the Loss of $700,975.00, with an amount claimed of $674,033.49.

67.

Antineekia White signed the Proof of Loss on behalf of Club Exclusive as its president.

68.

The Statement of Loss states that the loss to the Building totals $549,000.00.

69.

The Statement of Loss states that the loss for additional coverage debris removal totals $24,033.49.

70.

The Statement of Loss states that the loss for business personal property totals $151,975.03.

## VI.   THE INSURANCE CONTRACT

71.

On April 4, 2014, Ms. White completed an application for insurance on behalf of Club Exclusive (the "Application").[8]

72.

Club Exclusive is the only one listed as an applicant on the Application.

73.

In the Application's Premises Information section, the premises is identified as 3479 Barclay Road, Alpine, Alabama 36268, and Club Exclusive's interest in the premises is identified as "owner," as opposed to "tenant."

---

[8] A complete and accurate copy of the Application is attached hereto as Exhibit "I."

74.

The Application specifically asks whether there was "any policy or coverage declined, cancelled or non-renewed during the prior three (3) years for any premises or operations?"  Club Exclusive answered the question in the negative.

75.

The Application explicitly states that "the undersigned is an authorized representative of the applicant and represents that reasonable enquiry has been made to obtain the answers to questions on the application.  He/she represents that the answers are true, correct and complete to the best of his/her knowledge."  Ms. White was the referenced undersigned on the Application.

76.

Based on the information provided in the Application, Liberty subscribed to commercial property insurance policy no. SMF26514, which was issued to Club Exclusive, Inc. and provided certain coverage to real and business personal property located at 3479 Barclay Road, Alpine, Alabama 35014 (the "Property"), subject to its terms, limits, conditions, and exclusions, for the period of October 28, 2014, to October 28, 2015 (the "Policy").[9]  The Policy has limits of $500,000 for damage or

---

[9] A complete and accurate copy of the Policy is attached hereto as Exhibit "J."

loss to buildings on the Property and $150,000 for business personal property on the Property.

77.

Club Exclusive is designated as the "Named Insured" on the Policy.  No other person or entity is listed as a Named Insured or Additional Insured.

78.

The Policy states that "[t]hroughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations."

79.

The Policy provides certain Building and Business Personal Property Coverage to Club Exclusive, providing in relevant part:

**A.    Coverage**

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1.    Covered Property**

> Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> **a.    Building**, meaning the building or structure described in the Declarations, including:

(1)     Completed additions;

(2)     Fixtures, including outdoor fixtures;

(3)     Permanently installed:
      (a)     Machinery and
      (b)     Equipment;

(4)     Personal property owned by you that is used to maintain or service the structure or its premises, including:
      (a)     Fire-extinguishing equipment;
      (b)     Outdoor furniture;
      (c)     Floor coverings; and
      (d)     Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5)     If not covered by other insurance:
      (a)     Additions under construction, alterations and repairs to the building or structure;
      (b)     Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises . . . .

**b.**     **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises . . . .

\* \* \*

**E.     Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\* \* \*

**4.     Loss Payment**

\* \* \*

d.     We will not pay you more than your financial interest in the Covered Property.

\* \* \*

## COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A.     CONCEALMENT, MISREPRESENTATIONS OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.     This Coverage Part;

2.     The Covered Property;

3.     Your interest in the Covered Property; or

4.     A claim under this Coverage Part.

## VII.   PRIOR INSURANCE ON THE PROPERTY

80.

Prior to the Policy, Club Exclusive had other liability and property insurance

covering the Property (the "Prior Policies").[10]

81.

The Prior Policies certificates of insurance are dated June 15, 2012.

82.

The Prior Policies had effective dates of June 13, 2012, to June 13, 2013.

83.

Ms. White testified that the Prior Policies were cancelled.

### COUNT I – DECLARATORY JUDGMENT:
### CLUB EXCLUSIVE MISREPRESENTED MATERIAL
### FACTS IN THE INSURANCE APPLICATION

84.

Liberty repeats and realleges each of the foregoing paragraphs as if fully set

forth herein.

85.

Alabama Code § 27-14-7 provides:

(a)   All statements and descriptions in any application for an
insurance policy or annuity contract, or in negotiations therefor, by, or

---

[10] A copy of the prior insurance policies' certificates of insurance are attached as "Exhibit K."

in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1)   Fraudulent;

(2)   Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(3)   The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

86.

In the Application, Club Exclusive stated that it was the owner of the Property. It explicitly did not check the box indicating it was a tenant.

87.

In fact, Club Exclusive was not the owner of the Property, but rather leased the Property from Ms. White.

88.

In the Application, Club Exclusive also indicated that it had not had insurance cancelled within the previous three years, when prior insurance on the Property had been cancelled less than two years earlier.

89.

Club Exclusive's statements that it was the owner of the Property and that it had not had an insurance policy cancelled within the previous three years were fraudulent and/or false.

90.

Club Exclusive's statements that it was the owner of the Property and that it had not had an insurance policy cancelled within the previous three years were each, separately and independently, material misrepresentations to the acceptance of the risk or the hazard assumed by Liberty.

91.

If Liberty had known the true facts regarding Club Exclusive's interest in the Property and/or the prior cancellation of an insurance policy, it in good faith would not have issued the Policy, would not have issued the Policy at the premium rate as applied for, would not have issued the Policy in as large an amount, or would not have provided coverage with respect to the hazard that resulted in the Loss.

92.

The Policy is void *ab initio* and/or Liberty owes nothing under the Policy.  As a result, neither Club Exclusive, nor any other person, is entitled to coverage under the Policy.  Liberty stands ready to refund the premium.

## COUNT II – DECLARATORY JUDGMENT: CLUB EXCLUSIVE DOES NOT HAVE AN INSURABLE INTEREST IN THE PROPERTY

93.

Liberty repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

94.

Alabama Code § 27-14-4 provides:

(a)    No contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(b)    "Insurable interest," as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.

(c)    The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

95.

Club Exclusive did not own the Property, nor did it own the contents of the Building at the time of the Fire.  Rather, Ms. White owned the Property and its contents.

96.

Club Exclusive leased the Property from Ms. White, but the three year term for the Lease expired on the last day of April 2015, before the July 2015 Fire.

97.

Club Exclusive never made any rent payments to Ms. White in accordance with the Lease.

98.

Club Exclusive did not renew the Lease in accordance with its terms, nor did Club Exclusive enter into a new lease for the Property.

99.

Club Exclusive never opened for business.  It withdrew its liquor license application in August 2012 and never resubmitted the application.  It never applied for any other licenses, including a business license.  It had no paid employees and never filed taxes with the government.  It did not purchase any of the contents of the Building, as Ms. White purchased all such items out of her personal funds.  As such, Club Exclusive owned no tangible assets and was not operating a business at the time of the Fire, and therefore was not occupying the Property at the time of the Fire.

100.

Under the terms of the Lease, if Club Exclusive was occupying the Property at the time of the Loss, Club Exclusive was a tenant at sufferance.

101.

Given that Club Exclusive's lease of the Property had expired prior to the Fire and it was not occupying the Property at the time of the Fire, Club Exclusive had no insurable interest in the Property or its contents.

102.

Even if Club Exclusive was occupying the Property at the time of the Fire, it was merely a tenant in sufferance and, therefore, had no insurable interest in the Property or its contents.

103.

As Club Exclusive had no insurable interest in the Property or its contents, the Policy is void *ab initio* and/or Liberty owes nothing under the Policy.  As a result, neither Club Exclusive nor any other person is entitled to coverage under the Policy. Liberty stands ready to refund the premium.

## COUNT III – DECLARATORY JUDGMENT: CLUB EXCLUSIVE'S CONCEALMENT, MISREPRESENTATION AND/OR FRAUD IN ITS CLAIM

### 104.

Liberty repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

### 105.

The Policy voids coverage in the event Club Exclusive commits fraud or intentionally conceals or misrepresents material facts concerning its interest in the Property or its Claim.

### 106.

Alabama Code § 27-14-28 provides: "No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is made with actual intent to deceive as to a matter material to insured's rights under the policy."

### 107.

Club Exclusive stated in the 2014 Application that it was the owner of the Property, when in fact it was a tenant at the time of the Application.

108.

In its April 19, 2016, sworn Proof of Loss under oath, Club Exclusive states that "[a]t the time of the loss the interest of [it] in the property described therein was as insured owner.  No other person(s) had any interest therein or encumbrances thereon, except: no exceptions."

109.

In contrast, in its 2012 liquor license application, Club Exclusive stated that it was merely a tenant of the Property.

110.

Given Club Exclusive's prior knowledge of its lack of ownership interest in the Property, Club Exclusive's statements in the Application and Proof of Loss that it owned the Property were fraudulent and/or intentionally concealed or misrepresented a material fact concerning its interest in the Property.  Club Exclusive intended to deceive and induce reliance by Liberty with its misrepresentations.  Indeed, the purpose of the Proof of Loss was to induce payment for the Claim.

111.

Club Exclusive also submitted the Inventory List identifying numerous items it claims it owned and suffered damage in the Fire.  In its sworn Proof of Loss and

Statement of Loss, Club Exclusive claims losses for items on the Inventory List totaling $151,975.03.

112.

Club Exclusive's statements in its Proof of Loss and Inventory List were fraudulent and/or intentionally concealed and/or misrepresented a material fact concerning its Claim.  Club Exclusive intended to deceive and induce reliance by Liberty with its misrepresentations.

113.

Given Club Exclusive's statements regarding its ownership interest and the damaged contents were fraudulent and/or intentionally misrepresented material facts, Club Exclusive's Claim is void and Liberty owes no coverage for the Claim to Club Exclusive or any other person.

**WHEREFORE,** Liberty prays for:

(1) Declaring that Club Exclusive does not have an insurable interest in the Property or its contents, and therefore the Policy is void *ab initio*;

(2) Declaring that Club Exclusive misrepresented material facts in its application for insurance, and therefore the Policy is void *ab initio*;

(3) Declaring that Club Exclusive fraudulently and/or intentionally misrepresented material facts related to its ownership interest and/or claim for loss under the Policy, thereby voiding coverage for the Claim;

(4) Declaring that Liberty has no duty to pay Club Exclusive or any other person for coverage under the Policy;

(5) Awarding Liberty its costs; and

(6) Awarding Liberty such other and further relief as the Court may deem just and proper.

Respectfully submitted this 16th day of May, 2016.

**FIELDS HOWELL LLP**
1180 W. Peachtree Street, Suite 1600          */s/ Stephen A. Kahn*
Atlanta, Georgia 30309                       Stephen A. Kahn (KAH009)
Phone (404) 214-1250
Fax (404) 214-1251
skahn@fieldshowell.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| LIBERTY CORPORATE CAPITAL LIMITED | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 1:16-cv-00791-VEH |
| v. | ) | |
| | ) | |
| CLUB EXCLUSIVE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing

**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** on all parties,

via Process Server and United States mail with proper postage affixed thereto as

follows:

Club Exclusive
c/o Antineekia White, registered agent
233 Rowland Lane
Munford, Alabama 36268

This 16th day of May, 2016.

/s/ Stephen A. Kahn
Stephen A. Kahn (KAH009)