# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **LIBERTY CORPORATE CAPITAL LIMITED,** | ) | |
| | ) | |
| **Plaintiff/Counterclaim Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:16-CV-0791-VEH** |
| | ) | |
| **CLUB EXCLUSIVE, INC.,** | ) | |
| | ) | |
| **Defendant/Counterclaim Plaintiff.** | ) | |

## MEMORANDUM OPINION

## I.    Procedural Background

Plaintiff/Counterclaim Defendant Liberty Corporate Capital Limited ("Liberty") initiated this insurance action against Defendant/Counterclaim Plaintiff Club Exclusive, Inc. ("Club Exclusive") on May 13, 2016, seeking a declaratory judgment of its rights and obligations under a commercial insurance policy (the "Policy") issued to Club Exclusive. (Doc. 1). Club Exclusive answered Liberty's complaint and filed its counterclaims against Liberty on June 22, 2016. (Doc. 12).[1]

---

[1] In this same pleading, Club Exclusive filed claims against Wesley Charles Duesenberg, Jr. ("Mr. Duesenberg") and Marian Washburn ("Ms. Washburn") for the negligent procurement of insurance and breach of contract to procure insurance. However, on October 24, 2016, the court granted (Doc. 37) those parties' respective Motions To Dismiss (Docs. 29, 33), and Club Exclusive's claims against them no longer remain pending. Additionally, Mr. Duesenberg and Ms. Washburn were terminated as active parties on that same date.

On October 17, 2016, Liberty filed a Motion for Summary Judgment (Doc. 36) (the "Motion") as to all remaining claims and counterclaims. Club Exclusive has not responded to the Motion, and the 21-day deadline to do so under Appendix II of the court's Uniform Initial Order (Doc. 2 at 14) has expired. Thus, the Motion is now ripe for disposition and, for those reasons explained below, is due to be granted.[2]

## II. Standards

### A. Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R . CIV. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (instructing that "district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or its] favor" (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 2006) (en banc))). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[2] Club Exclusive has failed to file a corporate disclosure statement; however, the summary judgment record indicates that there is no parent/publicly held corporation to be disclosed.

When, such as here, the moving party is the plaintiff, satisfying this initial Rule 56 burden means "*affirmatively* . . . support[ing] its motion with credible evidence …. [and] show[ing] that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick*, 2 F.3d at 1115 (citations and internal quotation marks omitted) (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1438). Only "[o]nce the moving party has properly supported its motion for summary judgment, [does] the burden shift[] to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.  Failure of Club Exclusive To Oppose Liberty's Motion

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > **(1)** give an opportunity to properly support or address the fact;
> >
> > **(2)** consider the fact undisputed for purposes of the motion;
> >
> > **(3)** grant summary judgment if the motion and supporting

materials--including the facts considered undisputed--show that the movant is entitled to it; or

**(4)** issue any other appropriate order.

Fᴇᴅ. R. Cɪᴠ. P. 56(e). Regardless of these available options in the event of a non-movant's failure to oppose, "[t]he movant … continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (emphasis added).

As this court has previously stated when the non-movant offers no opposition to a summary judgment motion:

> Thus, although a court may not a grant a motion for summary judgment simply because the motion goes unopposed, it may do so if the moving party has shown that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true . . . , the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."); *see also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."); *see also* Fᴇᴅ. R. Cɪᴠ. P. 56(e).

*Griffin v. U.S. Postal Serv.*, No. 1:06-CV-0124-VEH (Doc. 29 at 3) (N.D. Ala. Nov. 7, 2008); *see also United States v. One Piece of Real Property*, 363 F.3d 1099 (11th

Cir. 2004) ("[T]he district court <u>cannot</u> base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (emphasis added) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam))); *One Piece*, 363 F.3d at 1099 ("The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, <u>but must ensure that the motion itself is supported by evidentiary materials</u>.") (emphasis added); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81 (1st Cir. 2005) (noting that, faced with a record without any opposing facts from non-movant, district court has discretion to "accept the moving party's allegedly uncontested facts as true, but <u>whether or not this justifies summary judgment for the moving party depends upon the legal and factual configuration that results</u>") (emphasis added) (*Laboy* cited with approval by Eleventh Circuit in *Reese*, 527 F.3d at 1269).

## III.    Factual Background[3]

### A.    Club Exclusive's Formation

Club Exclusive is an Alabama corporation formed on October 5, 2011. AF No. 1.[4] Antineekia White ("Ms. White") acted as the incorporator and is Club Exclusive's owner, director, and president. AF No. 2. Club Exclusive is a distinct and separate entity from Ms. White. AF No. 3.1. Ms. White understood that by incorporating Club Exclusive, there would be a legal difference between her and it and that she could potentially be protected from legal liability. AF No. 3.2.

---

[3] Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[4] Under Appendix II of the court's Uniform Initial Order (Doc. 2) entered on May 13, 2016, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by Liberty that it has adequately supported through citations to underlying evidence as Appendix II mandates. For Club Exclusive, more specifically, this means that even though it failed to oppose Liberty's Motion in any manner, the court has independently reviewed the proof (*i.e.*, Docs. 36-1, 36-2, 36-3, 36-4, 36-5, and any related attachments) offered by Liberty to establish that proposed fact before accepting it as a fact admitted by Club Exclusive. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Liberty's factual background as set forth in Doc. 36. A number following a decimal point corresponds to the particular sentence within the numbered statement of facts. For example, (AF No. 3.2) would indicate the second sentence of paragraph 2 of Liberty's Statement of Undisputed Facts is the subject of the court's citation to the record.

## B.    The Property

On June 23, 2012, Ms. White purchased approximately 13 acres of land in rural Alabama from Bruce Hutchinson for $2,000. AF No. 4.1. This property was located at 3479 Barclay Road, Alpine, Alabama 35014 (the "Property"). AF No. 4.2. Ms. White personally owned the Property. AF No. 4.3.

Ms. White built a commercial building (the "Building") on the Property using her personal funds. AF No. 5. Ms. White did not take out a loan to assist in paying for the construction of the Building, paying for the construction with unencumbered funds. AF No. 6.

Ms. White also paid for the contents of the Building with her personal funds. AF No. 7.1. She never transferred the ownership of such contents to Club Exclusive. AF No. 7.2.

## C.    The Lease

On April 30, 2012, Ms. White leased the Property to Club Exclusive (the "Lease"). AF No. 8. The Lease's three-year term expired on the last day of April 2015, and Club Exclusive did not renew the Lease pursuant to its terms. AF No. 9. The Lease expressly states that in the event Club Exclusive continued to occupy the Property after the Lease's term expired, "whether with or against the consent of [Ms. White], such tenancies shall be a tenancy at sufferance and in no event a tenancy from

month to month, or from year to year." AF No. 10.

In June 2012, Club Exclusive applied for a liquor license. AF No. 11. In the liquor license application, Club Exclusive is correctly identified as leasing the Property from Ms. White. AF No. 12. Ms. White signed the liquor license application on behalf of Club Exclusive, thereby attesting to the truthfulness of the responses given within the application in reference to the "lease/property ownership." AF No. 13.

### D.     The Application and the Policy

On April 4, 2014, Club Exclusive submitted an application for insurance for the Property (the "Application"). AF No. 14. Club Exclusive is the only one listed as an applicant on the Application. AF No. 15. In the Application's section inquiring into Club Exclusive's interest in the Property, Club Exclusive specifically marks "owner" instead of "tenant." AF No. 16.

Ms. White provided the information contained in the Application and signed the Application. AF No. 17.1. At the time she signed the Application, the information had been filled out. AF No. 17.2. The Application explicitly states that "the undersigned is an authorized representative of the Applicant and represents that reasonable inquiry has been made to obtain the answers to questions on this application." AF No. 17.3. "He/she represents that the answers are true, correct and

complete to the best of his/her knowledge." AF No. 17.4.

Based on the information included in the Application, Liberty subscribed to Policy (No. SMF 26514), which was issued to "Club Exclusive, Inc." through Southern Insurance Underwriters, Inc. ("SIU"). AF No. 18. "SIU is a managing general agent for Liberty with regard to the Policy and generally subscribes to policies on behalf of Liberty subject to certain conditions." (Doc. 36-5 at 2 ¶ 4).[5] The Policy provided certain commercial property insurance coverage to real and business personal property located on the Property for the period of October 28, 2014, to October 28, 2015, subject to the Policy's terms, limits, conditions, and exclusions. AF No. 18. Club Exclusive is the only Named Insured listed in the Policy. AF No. 19.1. No other person or entity is listed as a Named Insured, Additional Insured, or any other type of insured. AF No. 19.2.

### E.    The Fire

Sometime between July 14, 2015, and July 16, 2015 (after the Lease had expired), the Building burned (the "Loss" or "Fire"). AF No. 20. In furtherance of its claim for the loss, Club Exclusive submitted a Sworn Statement in Proof of Loss (the "Proof of Loss") and attached a Statement of Loss in support. AF No. 21.

---

[5] All page references to Doc. 36-5 correspond with the court's CM/ECF numbering system.

Through the Proof of Loss and Statement of Loss, Club Exclusive made a claim for $549,000 in alleged damage to the Building, for $151,975.03 in alleged damage to business personal property in the Building (the "BPP"), and $24,033.49 for debris removal (collectively known as the "Claim"). AF No. 22.

### F.    The DJ Action

On May 13, 2016, Liberty filed this declaratory judgment action (the "DJ Action") seeking a declaration that it owes no duty or obligation to Club Exclusive under the Policy. AF No. 23.1. In the DJ Action, Liberty argues, among other things, that the Policy is void because Club Exclusive misrepresented material facts in the Application, and because Club Exclusive did not have an insurable interest in the Property, Building, or the BPP. AF No. 23.2.

On June 22, 2016, Club Exclusive filed its Answer, Counterclaim Complaint against Liberty, and Crossclaim Complaint against Mr. Duesenberg and Ms. Washburn. AF No. 24. In the Counterclaim Complaint, Club Exclusive asserts causes of action against Liberty for breach of contract, bad faith failure to investigate, bad faith failure to pay a valid claim, and negligent hiring. AF No. 25.1. The negligent hiring claim is based on the alleged wrongful acts Club Exclusive asserts against Mr. Duesenberg and Ms. White in the crossclaims. AF No. 25.2.

On August 19, 2016, Mr. Duesenberg filed a Motion To Dismiss Club

Exclusive's crossclaims against him. AF No. 26. On August 22, 2016, Ms. Washburn filed a Motion To Dismiss Club Exclusive's crossclaims against her. AF No. 27. As mentioned in the procedural history section, the court granted both Motions To Dismiss on October 24, 2016, and both Mr. Duesenberg and Ms. Washburn were dismissed from this action. (Doc. 37). At no point in time has Ms. Washburn been an employee or agent of Liberty. AF No. 28.

## IV. Analysis

### A. The Policy Issued by Liberty to Club Exclusive Is Void for Multiple Reasons.

#### 1. Club Exclusive's misrepresentation of its ownership interest in the Property voids the Policy.

Liberty's first argument in favor of voiding the Policy pertains to Club Exclusive's misstatement in the Application about its ownership interest in the Property. (Doc. 36 at 11-13). As discussed below, Liberty has met its summary judgment burden with respect to this reason.

Concerning the contents of an application for insurance, Ala. Code § 27-14-7(a) provides:

> All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by, or in behalf of, the insured or annuitant shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and

11

incorrect statements shall not prevent a recovery under the policy or contract <u>unless</u> either:

> (1) Fraudulent;

> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or

> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

*Id.* (emphasis added); *see also In re HealthSouth Corp.*, 308 F. Supp. 2d 1253, 1269-70 (N.D. Ala. 2004) (recognizing that an insurer can rescind a policy under Alabama law if an insured's misrepresentation meets § 27-14-7(a)(1), (2), or (3)). Thus, Alabama law does not require proof of an insured's intent to deceive when answering a question erroneously on an application for insurance to void a policy; instead, "even if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005).

The materiality of a misrepresented fact on an application for insurance is

customarily a question for a jury to resolve. *Mega Life and Health Ins. Co. v. Pieniozek*, 585 F.3d 1399, 1404 (11th Cir. 2009). Nonetheless, as Liberty points out, Alabama law recognizes some exceptions to the general rule that materiality of a fact reported on an application is typically triable issue. *See, e.g., Integon Nat. Ins. Co. v. MT & R Enterprises, Inc.*, No. 4:10-CV-02021-HGD, 2012 WL 6043504, at *4 (N.D. Ala. Nov. 8, 2012) (analyzing § 27-14-7 and citing series of Alabama cases holding that certain misrepresentations can be material as a matter of law).

One such exception is when a misrepresentation is made about an insured's ownership interest. More specifically, in *Camden Fire Ins. Ass'n v. Landrum*, 229 Ala. 300, 156 So. 832 (1934), the Supreme Court of Alabama held that the insured's failure to disclose an adverse occupant possessing the property "was material, and, as [a] matter of law, increased the risk of loss under the law of fire insurance." *Id.*, 229 at 302, 156 So. at 833. Similarly, in *Gunn v. Palatine Ins. Co.*, 217 Ala. 89, 114 So. 690 (1927), the Supreme Court of Alabama recognized that "the ownership of a mere life estate in the insured will not be sufficient to meet these provisions of the policy" and "that, as a matter of law, the ownership of only a life estate, in view of the warranties as to ownership herein set out, was such as to increase the risk of loss . . . ." *Id.*, 217 Ala. at 92, 114 So. at 692.

In this case, the undisputed facts and the underlying evidence supporting those

facts, including the Property and Lease records, affirmatively establish that Club Exclusive misrepresented its ownership interest in the Property when submitting its Application for the Policy by incorrectly indicating that it was the "owner" of the Property. (Doc. 6-9 at 3). To the contrary, Ms. White owned the Property and Club Exclusive was, instead, a tenant which leased the Property from her.

Further, while *Camden* and *Gunn* do not involve the exact set of circumstances surrounding the issuance of this particular Policy, those decisions do provide persuasive support for finding that the ownership-related misrepresentation made by Club Exclusive in the Application was material to Liberty's risk as a matter of law such that the Policy is void and unenforceable under Ala. Code § 27-14-7(a)(2); (*see also* Doc. 36-5 at 4 ¶ 12 ("SIU considers the ownership interest in the Property to be a <u>material</u> fact, as evidence by the Application's question addressing the subject.") (emphasis added)).

Alternatively, pursuant to Ala. Code § 27-14-7(a)(3), Liberty has affirmatively shown–through the affidavit of Managing Underwriter for SIU, Hank Butler–that had the truth regarding ownership been known, the Policy would not have issued under the terms that it did. (*See* Doc. 36-5 at 3 ¶ 10 ("If SIU had been advised that Club Exclusive was not the owner of the Property, then this Policy would not have issued to Club Exclusive.")).

Accordingly, Liberty's Motion concerning its right to rescind the Policy as void on account of Club Exclusive's ownership-related misrepresentation made on the Application is due to be granted under either § 27-14-7(a)(2) or § 27-14-7(a)(3).

**2.    Club Exclusive's lack of an insurable interest in the Property or the BPP in the Building, at the time of the Loss, also voids the Policy.**

Liberty alternatively contends that the Policy is void because Club Exclusive did not have an insurable interest in the Property or the BPP in the Building. (Doc. 36 at 13-15).The court agrees.

Concerning the parameters of an insurable interest pertaining to property, Ala. Code § 27-14-4 provides:

> (a) No contract of insurance of property or of any interest in property, or arising from property, shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

> (b) "Insurable interest," as used in this section, means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.

> (c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

Ala. Code § 27-14-4(a)-(c). Further, "a party cannot collect insurance upon property in which he has no insurable interest." *N. British & Mercantile Ins. Co. v. Sciandra*,

256 Ala. 409, 417, 54 So. 2d 764, 770 (1951).

In establishing Club Exclusive's lack of an insurable interest, Liberty points out that it did not own the Property and that, at the time of the Loss–occurring between July 14, 2015, and July 16, 2015–Club Exclusive was a tenant by sufferance as the Lease had expired at the end of April 2015. (Doc. 36 at 14-15). Further, relying upon *Fid. Phenix Fire Ins. Co. of N.Y. v. Raper*, 242 Ala. 440, 6 So. 2d 513 (1941), Liberty maintains that in simply possessing the Property merely as a tenant by sufferance, Club Exclusive had no valid insurable interest. *See Raper*, 242 Ala. at 442, 6 So. 2d at 514 ("The law is clear that a person with no interest in the land other than that of a tenant by sufferance, or a squatter, or a trespasser, has no insurable interest in the property." (citing *Royal Exchange Assur. of London, England v. Almon*, 206 Ala. 45, 89 So. 76, 78 (1921))); *see also Almon*, 206 Ala. at 48, 89 So. at 78 ("Just bare possession of the barn with no facts averred except being the husband, to show right of possession and use of the barn, is not sufficient interest in the barn by plaintiff to be insured. It is not an insurable interest.").

Likewise, the undisputed facts show that Ms. White, and not Club Exclusive, held the insurable interest with respect to the BPP within the Building. More specifically, Ms. White confirmed under oath that she paid for the BPP with her personal funds and never transferred ownership of such items to Club Exclusive. (*See*

*generally* Doc. 36-1 at 33-34 (Ms. White's examination under oath taken on Apr. 19, 2016)).[6]

Accordingly, Liberty's Motion concerning its right to rescind the Policy as void due to Club Exclusive's lack of an insurable interest at the time of the Loss is due to be granted under § 27-14-4.

**B.     Liberty Is Entitled to Summary Judgment on Club Exclusive's Counterclaims.**

Club Exclusive has alleged four counterclaims against Liberty:  (1) breach of contract; (2) bad faith refusal to investigate; (3) bad faith failure to pay a claim; and (4) negligent hiring. As explained below, Liberty is entitled to summary judgment as to each one.

**1.     Because the Policy is void, Club Exclusive cannot maintain a breach of contract claim against Liberty.**

Club Exclusive's first counterclaim against Liberty is for breach of contract. (Doc. 12 at 47-52 ¶¶ 42-46). An action for breach of contract require proof of:  "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002) (citing *State Farm Fire & Cas. Co. v. Slade*,

_____

[6]  All page references to Doc. 36-1 correspond with the court's CM/ECF numbering system.

747 So. 2d 293, 303 (Ala. 1999)). Club Exclusive cannot satisfy the first *prima facie* element because, for those various reasons explained above, the Policy is void as a matter of law. Thus, Liberty's Motion is due to be granted with respect to Club Exclusive's counterclaim for breach of contract.

> ### 2. Because Club Exclusive has no viable breach of contract claim, no bad-faith liability alleged against Liberty is cognizable.

Club Exclusive asserts two bad-faith counts against Liberty. (*See* Doc. 12 at 52-57 ¶¶ 47-53 (refusal to investigate and/or pay a valid claim); *id.* at 57-61 ¶¶ 54-61 (failure to pay)). In collectively addressing the elements of bad-faith liability against an insurer, such as Liberty, whether premised upon the failure to pay an insurance claim or upon the failure to investigate an insurance claim, the Supreme Court of Alabama has summarized:

> We have repeatedly held that the tort of bad-faith refusal to pay a claim has four elements—(a) <u>a breach of insurance contract,</u> (b) the refusal to pay claim, (c) the absence of arguable reason, (d) the insurer's knowledge of such absence—with a conditional fifth element: "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Bowen*, 417 So. 2d at 183. Thus, for the tort of bad-faith refusal to pay, "[r]equirements (a) through (d) represent the 'normal' case. Requirement (e) represents the 'abnormal' case." *Grissett*, 732 So. 2d at 976. But the tort has always been *one*.

*State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013) (emphasis

by underlining added). Therefore, regardless of whether a plaintiff is pursuing a traditional bad-faith claim or a non-traditional one, it must establish breach of an insurance agreement as the initial element. *See Slade*, 747 So. 2d at 318 ("We think it clear that these authorities limit bad-faith liability to those cases in which the insured is entitled to benefits under the policy."); *id.* ("Although this Court has recognized several abnormal cases of bad faith, that recognition did not eliminate the requirement that the plaintiff prove an entitlement to benefits under the insurance policy."). Thus, Liberty's Motion is due to be granted with respect to Club Exclusive's counterclaim(s) premised upon bad-faith liability because the Policy is void as a matter of law; consequently, it has no cognizable right to pursue benefits against Liberty for a breach of the Policy.

### 3. Club Exclusive's negligent hiring claim is not cognizable because it cannot establish a wrongful act by an employee or agent of Liberty.

Finally, Club Exclusive counterclaims that Liberty is liable because it negligently hired, trained, monitored, and/or supervised Mr. Duesenberg and Ms. Washburn. (Doc. 12 at 68-70 ¶¶ 69-72). After explaining in detail several of its prior decisions, the Supreme Court of Alabama recognized in *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298 (Ala. 2010), that "implicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's

incompetence, the employee committed some sort of act, wrongdoing, or tort that *caused* the plaintiff's injury." *Id.* at 305; *see also United Steelworkers of America AFL–CIO–CLC v. O'Neal*, 437 So. 2d 101, 103 (Ala. 1983) ("In a joint action in tort for misfeasance or malfeasance against an agent and his principal, where respondeat superior is the sole basis of recovery, a verdict in favor of the agent works an automatic acquittal of the principal so that a verdict against him must be set aside." (citing *Larry Terry Contractors, Inc. v. Bogle*, 404 So. 2d 613, 614 (Ala. 1981))); *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008) ("Because we hold that the Jays' claims alleging wrongful conduct on the part of any employees or officers of Peoples Bank or Alabama Catfish were properly dismissed on summary judgment, their negligent- and/or wanton-supervision claim is without merit.").

Consistent with the foregoing cases, essential to establishing negligent hiring or training on the part of Liberty, Club Exclusive must show wrongful conduct on the part of either Mr. Duesenberg or Ms. Washburn. However, as explained above, all claims brought by Club Exclusive against Mr. Duesenberg and Ms. Washburn were dismissed by the court as non-cognizable on October 24, 2016, and both individual

defendants are no longer parties to this action.[7] Consequently, Club Exclusive's negligence claim against Liberty that is premised upon the legally inactionable conduct of Mr. Duesenberg and Ms. Washburn is likewise without merit.

Thus, Liberty's Motion is due to be granted with respect to Club Exclusive's counterclaim for negligent hiring, training, monitoring, and supervision against Liberty.[8]

## V.    Conclusion

Therefore, Liberty's Motion is due to be granted in all respects. Further, with no pending claims remaining, this case is due to be dismissed with prejudice. The court will enter a final judgment order consistent with this opinion.

**DONE** this 26th day of June, 2017.

_(signature)_

_____

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[7] Club Exclusive has not sought reconsideration of the court's decision to dismiss its claims filed against Mr. Duesenberg and Ms. Washburn and, the 10-day deadline to do so under the court's Uniform Initial Order has long expired. (Doc. 2 at 26).

[8] Because Liberty has shown that Ms. Washburn was never one of its employees or agents, summary judgment in favor of Liberty on the negligence counterclaim that are premised upon any acts of Ms. Washburn is appropriate for this additional reason. *Cf. Perkins v. Dean*, 570 So. 2d 1217, 1220, 1119 (Ala. 1990) (dismissing negligent supervision claim because of an absence of evidence showing knowledge of former employee's "alleged incompetence" that occurred some point after the employment relationship had ended–"[w]hen Dean had sex with Roberta Perkins, he was not employed by or associated with Northwest in such a way that a master/servant relationship existed . . . nor did the intercourse take place within the line or scope of Dean's employment with Northwest." (citations omitted).