IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 1:16-CV-791-VEH ) |
| CLUB EXCLUSIVE, INC., | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

**I.** **Introduction**

On June 26, 2017, the Court granted the Motion for Summary Judgment (doc. 36) filed by Plaintiff Liberty Corporate Capital Limited ("Liberty") and dismissed this case with prejudice. (Docs. 38, 39). Pending before the Court is Defendant's Club Exclusive, Inc.'s ("Club Exclusive") Motion To Set Aside, Alter, Or Vacate the Court's Order on Summary Judgment (doc. 40) (the "Motion") filed pursuant to Rule 60(b)(1) on July 24, 2017. Liberty opposed the Motion on August 8, 2017. (Doc. 41). Club Exclusive filed no reply. For the reasons discussed below, the Motion is **GRANTED**.

**II.** **Standard**

Here, Club Exclusive seeks post-judgment relief under Rule 60(b)(1) which

provides that a district court "may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]" FED. R. CIV. P. 60(b)(1). Club Exclusive more specifically relies upon excusable neglect.

In *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849 (11th Cir. 1996), the Eleventh Circuit summarized the Supreme Court's clarification of the excusable neglect standard in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993):

> While we have been at some pain to define "excusable neglect" in different fact situations, *see, e.g., Solaroll Shade, Varnes v. Local 91, Glass Bottle Blowers Assn.*, 674 F.2d 1365 (11th Cir. 1982), and *Seven Elves*. The Supreme Court has now clarified the meaning of "excusable neglect" in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). There the Court held that a bankruptcy court abused its discretion by refusing to permit the late filing of a proof of claim pursuant to Bankruptcy Rule 9006(b)(1). In reaching its decision, the Court reviewed the meaning of excusable neglect in the context of analogous rules that allow for late filings. It stated that "for purposes of Rule 60(b), <u>'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence</u>." *Id.* at ——, 113 S. Ct. at 1497. The Court concluded that whether a party's neglect of a deadline may be excused is <u>an equitable decision turning on "all relevant circumstances surrounding the party's omission</u>." *Id.* at ——, 113 S. Ct. at 1498 (citations and footnotes omitted). <u>The factors we must weigh include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith</u>." *Id.*

2

*Cheney*, 71 F.3d at 849-50 (emphasis added). Concerning "*Pioneer*'s good-faith inquiry, [the Eleventh Circuit] assess[es] whether the movant intentionally sought advantage by untimely filing." *Yang v. Bullock Fin. Grp., Inc.*, 435 F. App'x 842, 844 (11th Cir. 2011) (citing *Cheney*, 71 F.3d at 850).[1]

The *Cheney* court then applied the *Pioneer* factors to the movant's failure to file a timely trial *de novo* motion because of a lack of communication between the associate counsel and the lead counsel and concluded:

> On balance, the lack of prejudice to Anchor Glass, the minimal degree of delay and the reason therefor, and the lack of impact on the judicial proceedings, when coupled with the lack of bad faith on the part of Cheney, require a finding by the district court that the neglect of Cheney's counsel was "excusable." <u>The district court's failure to so find and to apply the correct legal standard and factors as announced in *Pioneer* constitute an abuse of discretion</u>. For these reasons, we REMAND the case to the district court for further proceedings on the merits of Cheney's claim.

71 F.3d at 850 (emphasis added); *see also Walter v. Blue Cross & Blue Shield United of Wisconsin*, 181 F.3d 1198, 1202 (11th Cir. 1999) (finding that "*Pioneer* and *Cheney* directly control the outcome of this case [involving a plaintiff's failure to timely respond to a motion to dismiss], and [that] all four factors weigh in favor of [movant]'s position").

---

[1] Although *Yang* is not binding on this Court, it is, nevertheless, acceptable to rely upon as persuasive authority.

### III. Analysis

#### A. Preliminary Issues Regarding the Parties' Filings and the Appropriate Standard for the Court To Apply

At the beginning of its argument, Club Exclusive suggests that the three-factor framework utilized by the Supreme Court of Alabama when deciding whether to set aside a default under ALA. R. CIV. P. 60(b)(1) is the model that this Court should apply in light of its failure to oppose summary judgment. (*See* Doc. 40 at 7 ("[T]he Court must apply the following three factors: (1) whether the defaulting party has a meritorious defense, (2) whether the nondefaulting party will be unfairly prejudiced if the default judgment is set aside, and (3) whether the default judgment was a result of the defaulting party's own culpable conduct." (citing *Kirtland v. Fort Morgan Auth. Sewer Serv., Inc.*, 524 So. 2d 600, 605 (Ala. 1988)))). In suggesting this standard arising under Alabama procedural law, Club Exclusive does not attempt to explain why this federal case should be governed by authorities applying ALA. R. CIV. P. 60(b)(1) rather than FED. R. CIV. P. 60(b)(1).

Citing to *Sampson v. Cansler*, 726 So. 2d 632 (Ala. 1998), Club Exclusive then maintains that "[a]lthough *Kirtland* involved a Rule 55(c) motion to set aside a default judgment, Alabama courts also apply the *Kirtland* factors to Rule 60(b) motions to set aside [all] judgments." (Doc. 40 at 7). However, *Sampson* does not

4

support Club Exclusive's position. Instead, *Sampson* states that "[a]lthough *Kirtland* involved a Rule 55(c) motion to set aside a default judgment, we also apply the *Kirtland* analysis to Rule 60(b) motions to set aside <u>default</u> judgments." 726 So. 2d at 633 (emphasis added). Therefore, Club Exclusive's reliance upon *Kirtland* and *Sampson* is misplaced for multiple reasons.

Later in its Motion, Club Exclusive discusses the *Pioneer-Cheney* model and cites to several different cases applying it. (Doc. 40 at 9-20). However, Club Exclusive does not ever directly apply those four factors to its facts. Instead, Club Exclusive generally contends that the "application of the four-factor test should result in the Court's entry of Summary Judgment being vacated." (Doc. 40 at 20).

Liberty, on the other hand, contends that the Court should follow the framework used by the Eleventh Circuit in *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291 (11th Cir. 2003) in deciding the merits of Club Exclusive's Motion. In *Worldwide Web*, the Eleventh Circuit agreed with the lower courts that the movant "failed to meet his burden of demonstrating . . . that final <u>default</u> judgment should have been set aside for excusable neglect . . . ." 328 F.3d at 1293-94 (emphasis added).

The Eleventh Circuit reached this determination by setting out and applying a Rule 60(b)(1) standard <u>particular to default judgments</u> that is very similar to the one

5

described by the Supreme Court of Alabama in *Kirtland* and *Sampson* discussed above:

> To establish mistake, inadvertence, or excusable neglect under Rule 60(b)(1), a defaulting party must show that: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint."

*Worldwide Web*, 328 F.3d at 1295 (citing *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993)). While the Eleventh Circuit discussed its earlier *Cheney* decision and, in particular, the factor of prejudice, it ultimately determined that "we cannot say that the lack of substantial prejudice to the non-moving party so tips the scale in favor of [the movant] that we should excuse his failure <u>to make even the barest showing of a meritorious defense or to present a good reason for failing to respond to the complaint</u>." 328 F.3d at 1297 (emphasis added).

In its opposition, Liberty focuses on the fact that Club Exclusive has not presented a meritorious opposition to summary judgment in its Motion and argues that such an omission–akin to not presenting a meritorious defense to the Rule 55 default judgment in *Worldwide Web*–means that the Motion should be denied. However, Liberty provides no explanation why the three-part default test utilized in *Worldwide Web* should apply equally to situations beyond those involving default judgment (such as this one). Additionally, *Cheney*, a missed trial *de novo* deadline

case, does not discuss that three-part test in addition to the Rule 60(b)(1) equitable factors. Finally, none of the cases that Liberty refers to in its opposition applies that three-part test when the movant's missed deadline is for something <u>other than default</u>.

Therefore, the Court finds that it is bound to apply the *Pioneer-Cheney* equitable factors when evaluating Club Exclusive's Motion. The Court further concludes that the *Worldwide Web*'s three-part default test, including specifically the merits-based component, is inapplicable when judgment has been entered on a Rule 56 record. As a result, the absence of a meritorious opposition to summary judgment included as part of Club Exclusive's Motion is not determinative here. *Cf. Yang*, 435 F. App'x at 844 ("Rather than focusing on the merits of the underlying action, the district court should have made specific findings regarding the legitimacy of the reason for the delay and the risk of adverse consequences resulting from the delay itself."); *id.* at 844 (finding that district court abused its discretion and committed reversible error in denying motion to extend the time in which to appeal under FED. R. APP. P. 4(a)(5)(A)(ii) because it failed to utilize the *Pioneer-Cheney* excusable neglect model).

### B. Application of the *Pioneer-Cheney* Model

Club Exclusive maintains that "[t]wo employees leaving abruptly and the newly discovered medical condition of Mr. Hackney [a long-time legal associate and

7

friend of Club Exclusive's counsel] led to the 'perfect storm' of excusable neglect."

(Doc. 40 at 4). As set out more specifically in the affidavit of Alan L. Jackson ("Mr.

Jackson"):

- On the day that Liberty filed its Motion for Summary Judgment, Mr. Jackson's "paralegal of 2 years left abruptly and without warning." (Doc. 40-1 at 2 ¶ 2).

- Mr. Jackson "depend[ed] on [his] paralegal to monitor and calendar any and all events and matter regard open cases . . . ." (*Id.* ¶ 3).

- Mr. Jackson maintains that his former paralegal "intentionally sand-bagged necessary work, changed passwords, converted pertinent and important emails to SPAM, and failed to calendar multiple dates in an attempt to harm [his] practice . . . ." (*Id.* ¶ 4).

- An associate attorney also left just a few days before Liberty filed its Motion for Summary Judgment and "le[ft] an overwhelming amount of opened cases to be managed." (*Id.* ¶ 5).

- Additionally, J. Danny Hackney ("Mr. Hackney"), who Mr. Jackson has associated with on certain cases, "discovered that he was suffering from Diabetic Unawareness and was under a doctor's care." (Doc. 40-1 at 3 ¶ 6).[2]

- As part of "the restructuring and shuffling of case load, it was decided that Mr. Hackney would focus only on and monitor Club Exclusive" and that Mr. Jackson would be responsible for all other open cases. (*Id.* ¶ 7).

- "During all this turmoil . . . the filing of and deadline for the

---

[2] Mr. Hackney's separately filed affidavit confirms his diagnosis of hypoglycemia unaware. (Doc. 40-2 at 3-4 ¶ 5).

Summary Judgment was missed." (Doc. 40-1 at 3 ¶ 8). Further, Mr. Jackson was not anticipating any dispositive motion to be filed until closer to the deadline of August 25, 2017, as set out in the Scheduling Order. (*Id.* at 3-4 ¶ 8).

- "When it was discovered that a Final Judgment was entered," Mr. Jackson subsequently found the Motion for Summary Judgment in the SPAM folder for his email. (Doc. 40-1 at 4 ¶ 9).

**Absence of Unfair Prejudice to Liberty Favors Granting the Motion**

Turning to the first equitable factor, Liberty contends that it will suffer serious prejudice if the Court's summary judgment ruling is vacated. As support, Liberty states that allowing Club Exclusive the opportunity to oppose its Motion for Summary Judgment "would impose time and expense costs on Liberty unnecessarily" because Club Exclusive has no meritorious defense to summary judgment. (Doc. 41 at 9).

As explained in § III.A above, whether Club Exclusive can successfully oppose the merits of Club Exclusive's Motion for Summary Judgment is not one of the factors that should influence this Court's excusable neglect determination (at least under these non-Rule 55 circumstances). Further, while the Court finds that Liberty could suffer some prejudice by the Court's vacating the summary judgment ruling, that prejudice would be, at most, only minimal and/or fixable by the Court. Liberty has already filed and briefed its Motion for Summary Judgment and therefore its

9

additional expense would be limited to reviewing and responding to Club Exclusive's opposition and filing a reply brief. Importantly, Liberty would have incurred this expense if Club Exclusive had not missed its opposition deadline. Also, if Club Exclusive's opposition lacks merit (as Liberty insists that it will), then summary judgment will be entered in Liberty's favor as before.

Liberty also states that it "would be substantially prejudiced if the order were set aside, as it would be prevented from conducting discovery on any potential issues due to Club Exclusive's delay." (Doc. 41 at 10). Discovery closed in this case on June 26, 2017 (doc. 28), the same day on which the Court granted Liberty's Motion for Summary Judgment. Liberty filed its Motion for Summary Judgment on October 17, 2016, over six months prior to the discovery expiration date. Consequently, Liberty would be precluded from conducting further discovery (if it saw a need to do so after considering Club Exclusive's opposition) unless the Scheduling Order is modified. *Cf. Cheney*, 71 F.3d at 850 ("We see nothing indicating Anchor Glass was lulled or otherwise prejudiced by the untimely filing[.]").

Nonetheless, the Court finds that any prejudice caused by the close of discovery can be easily and adequately redressed. More specifically, if Club Exclusive's Motion is granted and its opposition has some merit that triggers the need for Liberty to conduct discovery regarding certain issues, then the Court would

consider reopening the discovery period for that limited purpose upon a properly filed motion from Liberty. Therefore, the Court finds that the first factor favors granting Club Exclusive's Motion.

### **<u>Negative Impact on Judicial Administration</u>**
### **<u>Slightly Favors Denying the Motion</u>**

Turning to the second factor of the delay's duration and its potential impact on efficient judicial administration, if Club Exclusive had timely opposed Liberty's Motion for Summary Judgment on October 17, 2016, it would have completed that filing on or before November 7, 2016. Instead, Club Exclusive filed its Motion within 28 days of the Court's ruling on summary judgment on June 26, 2017, and over 8 months after its response to Liberty's Motion for Summary Judgment was due under Appendix II of the Court's Uniform Initial Order. (Doc. 2). While the elapse in time between the due date of Club Exclusive's opposition to Liberty's Motion for Summary Judgment and the filing date of Club Exclusive's Motion is significant, the less than one month gap between the Court's summary judgment ruling and Club Exclusive's Motion is more reasonable.

Citing to *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 935 (11th Cir. 2007), Liberty contends that Club Exclusive's "excessive delay calls for an overwhelmingly compelling reason for its failure to respond." (Doc. 41 at 12). The exact language

from *Eurisol* states that "[t]he longer a defendant—even a foreign defendant—delays in responding to a complaint, the more compelling the reason it must provide for its inaction when it seeks to set aside a default judgment. The affidavits Eurisol submitted, given the delay here, were simply insufficient."

In relying upon *Eurisol*, Liberty does not ever acknowledge that the Eleventh Circuit was dealing with a default judgment case, much less explain why the Court should be persuaded to apply *Eurisol*'s reasoning to the summary judgment response deadline that Club Exclusive missed. Liberty also does not make any assertion about the potential negative impact that Club Exclusive's delay has had on efficient judicial administration. *Cf. Cheney*, 71 F.3d at 850 ("[W]e see no adverse impact on the district court or its resources by permitting the case to be tried as it would have been had Cheney complied with Local Rule 8.06.").

However, at the same time, Club Exclusive has not attached a proposed opposition to Liberty's Motion for Summary Judgment or indicated that it will file an opposition no later than a specific period of time after its Motion is granted. Instead, Club Exclusive asks for the Court to give it "an appropriate amount of time to answer and respond to the previously filed Motion for Summary Judgment." (Doc. 40 at 21). This lack of proactive conduct on the part of Club Exclusive and continued delay (after realizing its procedural mistake) means that the second factor only slightly

12

favors a denial of Club Exclusive's Motion. *Cf. Walter*, 181 F.3d at 1199 ("Walter then moved to set aside the dismissal <u>and filed a belated opposition to the motion to dismiss on jurisdictional grounds</u>.") (emphasis added); *Norment v. Newton Cty. Sheriff's Dep't*, 352 F. App'x 316, 318 (11th Cir. 2009) ("William's counsel waited five months before attempting to correct his error; this delay was significant."); *id.* ("Also, because William had notice of his failure to file the required statement, <u>but he made no effort to correct the mistake</u>, his counsel's error was too serious, even if made in good faith, to be considered 'excusable neglect.'" (emphasis added)).

### Club Exclusive's Carelessness-Based Explanation for the Delay Favors Granting the Motion

Concerning the third factor–Club Exclusive's reason for delay and whether it was within the reasonable control of the movant–the Court finds that this factor favors granting Club Exclusive's Motion. While the reason for missing the opposition deadline was arguably within counsel's control, the affidavits attached to the Motion establish that Club Exclusive's missing of its opposition deadline "and resulting inaction amounts only to an 'omission[] caused by carelessness.'" *Cheney*, 71 F.3d at 850 (quoting *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495). To the extent that the affidavit of Mary Slaton ("Ms. Slaton") (doc. 41-3)–the former paralegal for Mr. Jackson–filed by Liberty brings into the question some portions of Mr. Jackson's

13

affidavit, the Court finds that those particular factual disputes are not pivotal to its Rule 60(b)(1) equitable analysis. More specifically, the Court's equitable focus is not so much on whether Ms. Slaton actually caused Liberty's Motion for Summary Judgment to be sent to SPAM, but rather that the summary judgment filing (for whatever reason) in fact went to Mr. Jackson's SPAM folder. Additionally, Mr. Jackson was focusing on the dispositive motion deadline of August 25, 2017, set out in the Scheduling Order as the anticipated filing date for summary judgment rather than the actual (and significantly early) filing date of October 17, 2016.

### **Absence of Bad Faith on the Part of Club Exclusive Favors Granting the Motion**

As for the final factor, the Court must evaluate whether Club Exclusive's failure to timely oppose Liberty's Motion for Summary Judgment was done so purposefully to gain an advantage in this litigation. *See Cheney*, 71 F.3d at 850 (confirming whether "[t]he nonfiling was simply an innocent oversight by counsel" or whether the nonfiling was "attributable to [something more than] negligence"). Club Exclusive has expressly stated that "[t]he inadvertent missing of the deadline for opposition to summary judgment was not part of any strategic litigation plan by Counsel for the Defendant/Counter-Plaintiff." (Doc. 40 at 3); (Doc. 40-1 at 4 ¶ 10).

While Liberty challenges whether Club Exclusive's Motion and attached

affidavits constitute "good cause" for granting Rule 60(b)(1) relief to Club Exclusive (doc. 41 at 10), Liberty makes no argument that Club Exclusive has acted with bad faith (or without good faith) in filing its Motion. Therefore, consistent with *Cheney*, the Court finds that the fourth factor favors granting the Motion. *See Cheney*, 71 F.3d at 850 ("Anchor Glass has not argued that Cheney intended to delay the trial, or that he sought an advantage by filing late.").

**IV.   Conclusion**

In sum, the first, third, and fourth *Pioneer-Cheney* factors all favor granting Club Exclusive's Motion. The second factor is the only one that disfavors granting it and, even so, the Court has found that it only minimally weighs against Club Exclusive's request for Rule 60(b)(1) relief. Therefore, under a totality of the circumstances, Club Exclusive's Motion is **GRANTED** and the memorandum opinion and summary judgment order (docs. 38, 39) entered in favor of Liberty are **HEREBY SET ASIDE**. The new deadline for Club Exclusive to oppose Liberty's Motion for Summary Judgment is December 12, 2017, and the deadline for Liberty

to reply is January 8, 2018.³, ⁴

      **DONE** and **ORDERED** this 21st day of November, 2017.

                                                */s/ Virginia Emerson Hopkins*
                                      **VIRGINIA EMERSON HOPKINS**
                                      United States District Judge

---

    ³ If Liberty believes that discovery is necessary in order for it to adequately respond to Club Exclusive's opposition, then it should file a Rule 16 motion to modify the Scheduling Order **no later than December 19, 2017**, and include a declaration explaining what areas of discovery are needed from Club Exclusive and why. If the Court grants such a motion then Liberty's deadline to reply will be reset. If the Court denies the relief, then Liberty's reply deadline will not change.

    ⁴ Although the Court believes that Liberty will be able to show good cause for the Court to reopen discovery <u>by Liberty</u>, it takes no position at this time as to whether it should similarly reopen discovery by Club Exclusive.